# EXHIBIT A

FILED
04-26-2022
CIRCUIT COURT
DANE COUNTY, WI
2022CV000997
Honorable Everett Mitchell
Branch 4

**STATE OF WISCONSIN    CIRCUIT COURT    DANE COUNTY**

**BRANCH ___**

---

**COUNTY OF DANE**
210 Martin Luther King, Jr. Blvd.
Madison, Wisconsin 53703,

        Plaintiff,

        v.

**3M COMPANY**
**(f/k/a Minnesota Mining and Manufacturing Co.)**
3M Center, St. Paul, Minnesota 55144

**AGC CHEMICALS AMERICAS INC.**
55 E. Uwchlan Avenue, Suite 201
Exton, Pennsylvania 19341

**AGC, INC. (f/k/a Asahi Glass Co., Ltd.)**
1-5-1, Marunouchi, Chiyoda-ku, Tokyo 100-8405 Japan

**ANGUS INTERNATIONAL SAFETY GROUP, LTD**
c/o Paul Williams, CEO
Station Road, High Bentham
Near Lancaster, United Kingdom LA2 7NA

**ARCHROMA MANAGEMENT, LLC**
Neuhofstrasse 11, 4153 Reinach, Basel-Land, Switzerland

**ARCHROMA U.S., INC.**
5435 77 Center Dr., #10, Charlotte, North Carolina 28217

**ARKEMA, INC.**
900 1ˢᵗ Avenue, King of Prussia, Pennsylvania 19406

**BASF CORPORATION**
100 Park Avenue, Florham Park, New Jersey 07932

**BUCKEYE FIRE EQUIPMENT COMPANY**
110 Kings Road, Mountain, North Carolina 28086

Case No.: 22-___-_____

PRODUCTS LIABILITY – 30100

THE AMOUNT CLAIMED IS GREATER THAN THE AMOUNT CLAIMED UNDER WIS. STAT. § 799.01(1)(d)

1

**CARRIER GLOBAL CORPORATION**
13995 Pasteur Boulevard
Palm Beach Gardens, Florida 33418

**CENTRAL SPRINKLER, LLC**
1400 Pennbrook Parkway, Lansdale, Pennsylvania

**CHEMDESIGN PRODUCTS, INC.**
2 Stanton Street, Marinette, Wisconsin 54143

**CHEMGUARD, INC.**
One Stanton Street, Marinette, Wisconsin 54143

**CHEMICALS INCORPORATED**
12321 Hatcherville Road, Baytown, Texas 77521

**CHUBB FIRE, LTD.**
Littleton Road, Ashford, Middlesex
United Kingdom TW15 1TZ

**CLARIANT CORPORATION**
4000 Monroe Road, Charlotte, North Carolina 28205

**CORTEVA, INC.**
974 Centre Road, Wilmington, Delaware 19805

**DEEPWATER CHEMICALS, INC.**
196122 E County Road 40, Woodward, Oklahoma 73801

**JOHN DOE DEFENDANTS 1-49**

**DUPONT DE NEMOURS, INC.**
974 Centre Road, Building 730,
Wilmington, Delaware 19805

**DYNAX CORPORATION**
103 Fairview Park Drive, Elmsford, New York 10523

**E. I. DUPONT DE NEMOURS AND COMPANY**
974 Centre Road, Wilmington, Delaware 19805

**KIDDE PLC, INC.**
9 Farm Springs Road, Farmington, Connecticut 06032

**FIRE PRODUCTS GP HOLDING, LLC**
9 Roszel Road, Princeton, New Jersey 08540

2

**JOHNSON CONTROLS INTERNATIONAL, PLC**
One Albert Quay, Cork, Ireland

**KIDDE-FENWAL, INC.**
400 Main Street, Ashland, MA 01721

**NATION FORD CHEMICAL COMPANY**
2300 Banks Street, Fort Mill, South Carolina 29715

**NATIONAL FOAM, INC.**
141 Junny Road, Angier, North Carolina 27501

**RAYTHEON TECHNOLOGIES CORPORATION**
**(f/k/a United Technologies Corporation)**
870 Winter Street, Waltham, MA 02451

**THE CHEMOURS COMPANY**
1007 Market Street, Wilmington, Delaware 19899

**THE CHEMOURS COMPANY FC, LLC**
1007 Market Street, Wilmington, Delaware 19899

**TYCO FIRE PRODUCTS LP**
1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446

**UTC FIRE & SECURITY AMERICAS**
**CORPORATION, INC.**
13995 Pasteur Blvd., Palm Beach Gardens, Florida 33418,

　　　　　　Defendants.

---

## SUMMONS

---

**THE STATE OF WISCONSIN**

To each person named above as a Defendant:

You are hereby notified that the Plaintiff named above has filed a lawsuit or other legal action against you. The complaint, which is attached, states the nature and basis of the legal action.

Within 20 days of receiving this summons, you must respond with a written answer, as that term is used in chapter 802 of the Wisconsin Statutes, to the complaint. The court may reject or disregard an answer that does not follow the requirements of the statutes. The answer must be

sent or delivered to the court, whose address is 5th Judicial District, Courthouse, 215 S Hamilton St., Madison, WI 53703, and to Arynne Johnson, Plaintiff's attorney, whose address is 3102 Oak Lawn Ave., Suite 1100, Dallas, Texas 75219. You may have an attorney help or represent you.

If you do not provide a proper answer within 20 days, the court may grant judgment against you for the award of money or other legal action requested in the complaint, and you may lose your right to object to anything that is or may be incorrect in the complaint. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

Dated this 26th day of April 2022.

**BARON & BUDD, P.C.**
Attorneys for Plaintiff

Electronically filed by: /s/ Arynne Johnson
Arynne Johnson
State Bar No.:  1117708
Address: 3102 Oak Lawn Ave., Suite 1100
Dallas, Texas 75219
(214) 521-3605

FILED
04-26-2022
CIRCUIT COURT
DANE COUNTY, WI
2022CV000997
Honorable Everett Mitchell
Branch 4

**STATE OF WISCONSIN     CIRCUIT COURT     DANE COUNTY**

**BRANCH ___**

_____

COUNTY OF DANE,

        Plaintiff,

    v.                                                      Case No.: 22-___-_____

3M COMPANY (f/k/a Minnesota Mining and        PRODUCTS LIABILITY – 30100
Manufacturing Co.); AGC CHEMICALS
AMERICAS INC.; AGC, INC. (f/k/a Asahi Glass
Co., Ltd.); ANGUS INTERNATIONAL SAFETY
GROUP, LTD; ARCHROMA MANAGEMENT,
LLC; ARCHROMA U.S., INC.; ARKEMA, INC.;
BASF CORPORATION; BUCKEYE FIRE
EQUIPMENT COMPANY; CARRIER GLOBAL
CORPORATION; CENTRAL SPRINKLER,
LLC; CHEMDESIGN PRODUCTS, INC.;
CHEMGUARD, INC.; CHEMICALS
INCORPORATED; CHUBB FIRE, LTD.;
CLARIANT CORPORATION; CORTEVA,
INC.; DEEPWATER CHEMICALS, INC.; JOHN
DOE DEFENDANTS 1-49; DUPONT DE
NEMOURS, INC.; DYNAX CORPORATION; E.
I. DUPONT DE NEMOURS AND COMPANY;
KIDDE PLC, INC.; FIRE PRODUCTS GP
HOLDING, LLC; JOHNSON CONTROLS
INTERNATIONAL, PLC; KIDDE-FENWAL,
INC.; NATION FORD CHEMICAL COMPANY;
NATIONAL FOAM, INC.; RAYTHEON            THE AMOUNT CLAIMED
TECHNOLOGIES CORPORATION (f/k/a         IS GREATER THAN THE
United Technologies Corporation); THE    AMOUNT CLAIMED UNDER
CHEMOURS COMPANY; THE CHEMOURS          WIS. STAT. § 799.01(1)(d)
COMPANY FC, LLC; TYCO FIRE PRODUCTS
LP; and UTC FIRE & SECURITY AMERICAS
CORPORATION, INC.,

        Defendants.

_____

**CIVIL COMPLAINT**

_____

1

Plaintiff, County of Dane ("Plaintiff"), by and through its undersigned counsel, brings this action against Defendants, 3M Company (f/k/a Minnesota Mining and Manufacturing Co.), E. I. DuPont De Nemours and Company, The Chemours Company, The Chemours Company FC, LLC, DuPont de Nemours, Inc., Corteva, Inc., Chemguard, Inc., Tyco Fire Products LP (individually and as successor-in-interest to The Ansul Company), Johnson Controls International, plc, Central Sprinkler, LLC, Fire Products GP Holding, LLC, Kidde-Fenwal, Inc., Kidde PLC, Inc., Chubb Fire, Ltd., UTC Fire & Security Americas Corporation, Inc., Carrier Global Corporation, Raytheon Technologies Corporation (f/k/a United Technologies Corporation), Nation Ford Chemical Company, National Foam, Inc., Angus International Safety Group, Ltd., Buckeye Fire Equipment Company, Arkema, Inc., BASF Corporation, ChemDesign Products, Inc., Clariant Corporation, Chemicals Incorporated, AGC Chemicals Americas, Inc., AGC, Inc. (f/k/a Asahi Glass Co., Ltd.), Deepwater Chemicals, Inc., Dynax Corporation, Archroma Management, LLC, Archroma U.S., Inc., and John Doe Defendants 1-49 (collectively, "Defendants"), and alleges as follows:

## SUMMARY OF THE CASE

1.      Plaintiff, Dane County, Wisconsin ("Dane County" or "Plaintiff") brings this action against Defendants to recover any and all past and future compensatory and/or consequential damages for the investigation, remediation, removal, disposal, treatment, and monitoring of the ongoing contamination of its surface water, groundwater, soil, and sediment caused and/or created by Defendants' products, diminished property value, attorneys' fees and costs, as well as any and all other damages available as a result of the actions and/or inactions of Defendants.

2.      The Dane County Regional Airport ("the Airport") is owned by the Plaintiff.

3. Plaintiff, as the governing body of the Airport, is the administrator, operator and/or owner of the Airport, and other relevant structures located thereon (collectively, "Plaintiff's Property"), and is vested with the power and authority to sue relative thereto.

4. The Airport is a joint civil-military airport operated by Plaintiff under a joint-use agreement with the United States of America and the State of Wisconsin.

5. Per- and polyfluoroalkyl substances ("PFAS"), including but not limited to perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"), have been discovered in the soil, groundwater, surface water, and stormwater in parts of Plaintiff's Property.

6. PFOA and PFOS are man-made compounds that are toxic and persistent in the environment, do not biodegrade, move readily through soil and groundwater, and pose a significant risk to human health and safety.

7. At various times from the 1960s through today, Defendants designed, manufactured, formulated, marketed, distributed, and/or sold PFOA, PFOS, the chemical precursors of PFOA and/or PFOS, and/or aqueous film-forming foam ("AFFF") containing PFOA, PFOS and/or their chemical precursors (collectively, "Fluorosurfactant Products").

8. AFFF is a firefighting agent used to control and extinguish Class B fuel fires and is used at sites such as military bases, airports, petroleum refineries, and fire training centers.

9. Defendants designed, manufactured, marketed, distributed, and/or sold Fluorosurfactant Products with the knowledge that these toxic compounds would be released into the environment during fire protection, training, and response activities, even when used as directed and intended by the Defendants.

10. Upon information and belief, at all times pertinent herein, Defendants' Fluorosurfactant Products have been released, used, stored, and/or disposed of at or near Plaintiff's

3

Property for fire protection, training, and response activities. During these activities, Defendants' Fluorosurfactant Products were stored, used, cleaned up, and/or disposed of as directed and intended by the Defendants, which allowed PFOS, PFOA, and/or their chemical precursors to enter the environment, and migrate through soil, sediment, groundwater, surface water, and stormwater, thereby contaminating Plaintiff's Property.

11.     As a result of the use of Defendants' Fluorosurfactant Products for their intended purpose, PFOS, PFOA, and/or their chemical precursors have been detected in the soil, groundwater, surface water, and stormwater of Plaintiff's Property at substantial levels.

12.     Plaintiff's Property has been, and continues to be, contaminated by Defendants' Fluorosurfactant Products.

13.     At all times pertinent herein, Plaintiff did not know, nor should Plaintiff have known, of the ongoing contamination of its Property through the use, release, storage, and/or disposal of Defendants' Fluorosurfactant Products as Defendants did not disclose the toxic nature and harmful effects of these Fluorosurfactant Products.

14.     Through this action, Plaintiff seeks to recover compensatory and/or consequential damages for all past and future costs to investigate, remediate, remove, dispose of, treat, and monitor the PFOS and PFOA contamination of Plaintiff's Property caused by the use of Defendants' Fluorosurfactant Products on Plaintiff's Property, as well as any and all other damages recoverable under state and/or applicable federal laws. Plaintiff also seeks damages and restitution for the diminution of value of Plaintiff's Property, punitive damages, as well as reasonable attorneys' fees and costs.

## PARTIES

15.     Plaintiff, County of Dane, is the governing authority of the Dane County Regional Airport. Plaintiff is a body corporate of the State of Wisconsin and is authorized to bring the causes of action alleged herein.  Wis. Stat. § 59.01.  This action was authorized by 2021 RES 336 adopted by the Dane County Board of Supervisors on February 17, 2022, and approved by the Dane County Executive on February 21, 2022.  See Wis. Stat. § 59.02(1).  Plaintiff's principal address is located at 210 Martin Luther King, Jr. Boulevard, Madison, Wisconsin 53703.

16.     Upon information and belief, the following Defendants designed, manufactured, formulated, marketed, promoted, distributed, and/or sold the Fluorosurfactant Products that have and continue to contaminate Plaintiff's Property:

   a.   Defendant 3M Company (f/k/a Minnesota Mining and Manufacturing Company) ("3M") is a Delaware corporation authorized to conduct business in Wisconsin, with its principal place of business located at 3M Center, St. Paul, Minnesota 55144.  3M is the only company that manufactured and/or sold AFFF containing PFOS in the United States, including Wisconsin.

   b.   Defendant E. I. DuPont De Nemours and Company ("DuPont") is a Delaware corporation with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.  DuPont is registered to do business in the State of Wisconsin.

   c.   Defendant The Chemours Company ("Chemours") is a Delaware corporation with its principal place of business located at 1007 Market Street, Wilmington, Delaware 19899.  Upon information and belief, Chemours has conducted and/or availed itself of doing business throughout the United States, including in Wisconsin.

d.  In 2015, DuPont spun off its "Performance Chemicals" business to Chemours, along with certain environmental liabilities. Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries arising from the manufacture and sale of fluorosurfactants and the products that contain fluorosurfactants.

e.  Defendant The Chemours Company FC, LLC ("Chemours FC"), successor-in-interest to DuPont Chemical Solutions Enterprise, is a Delaware limited liability company with its principal place of business located at 1007 Market Street Wilmington, Delaware, 19899.  Chemours FC is registered to do business in the State of Wisconsin.

f.  Defendant DuPont de Nemours, Inc. is a Delaware corporation with its principal place of business located at 974 Centre Road, Building 730, Wilmington, Delaware 19805.  Upon information and belief, DowDuPont, Inc. was formed in 2017 as a result of the merger of Dow Chemical and DuPont. DowDuPont, Inc. was subsequently divided into three publicly traded companies and on June 1, 2019, DowDuPont, Inc. changed its registered name to DuPont de Nemours, Inc. ("New DuPont").  Upon information and belief, DuPont de Nemours, Inc. and/or DowDuPont, Inc. have conducted and/or availed itself of doing business throughout the United States, including in Wisconsin.

g.  Defendant Corteva, Inc. is a Delaware corporation with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.  Upon

6

information and belief, Corteva, Inc. is one of the aforementioned spin-off companies from DowDuPont, Inc., and is believed to have assumed some of the PFAS liabilities of the former DuPont. Corteva, Inc. is registered to do business in the State of Wisconsin.

h.  Defendant Chemguard, Inc. is a Texas corporation with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143. Upon information and belief, Chemguard, Inc. has conducted and/or availed itself of doing business throughout the United States, including in Wisconsin.

i.  Defendant Tyco Fire Products LP ("Tyco") is a Delaware limited partnership with its principal place of business located at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446. Tyco acquired Chemguard in 2011. Tyco is a subsidiary of Johnson Controls International, plc, an Irish public limited company. Tyco is registered to do business in Wisconsin.

j.  Tyco is the successor-in-interest to The Ansul Company ("Ansul") and manufactures the Ansul brand of products (Ansul and/or Tyco as the successor-in-interest to Ansul will be referred to collectively as "Tyco/Ansul"). Upon information and belief, Tyco/Ansul has conducted and/or availed itself of doing business throughout the United States, including in Wisconsin.

k.  Defendant Johnson Controls International, plc ("JCI plc") is an Irish public limited company with its principal place of business located at One Albert Quay, Cork, Ireland.

l.  Defendant Central Sprinkler, LLC is a Delaware limited liability company with its principal place of business located at 1400 Pennbrook Parkway, Lansdale, Pennsylvania. Upon information and belief, this Defendant is a limited partner of

Tyco. Upon information and belief, Chemguard is wholly-owned by Central Sprinkler, LLC. Upon information and belief, Central Sprinkler, LLC has conducted and/or availed itself of doing business throughout the United States, including in Wisconsin.

m. Defendant Fire Products GP Holding, LLC is a Delaware limited liability company with its principal place of business located at 9 Roszel Road, Princeton, New Jersey 08540. Upon information and belief, this Defendant is a general partner of Tyco. Fire Products GP Holding, LLC is registered to do business in Wisconsin.

n. Defendant Kidde-Fenwal, Inc. ("Kidde") is a Delaware corporation with its principal place of business located at 400 Main Street, Ashland, MA 01721. Upon information and belief, Kidde was part of UTC Fire & Security Americas Corporation, Inc. Upon information and belief, Kidde-Fenwal, Inc. is the successor-in-interest to Kidde Fire Fighting, Inc. (collectively, "Kidde/Kidde Fire"). Upon information and belief, Kidde/Kidde Fire has conducted and/or availed itself of doing business throughout the United States, including in Wisconsin.

o. Defendant Kidde PLC, Inc. is a Delaware corporation with its principal place of business located at 9 Farm Springs Road, Farmington, Connecticut 06032. Upon information and belief, Kidde PLC, Inc. was part of UTC Fire & Security Americas Corporation, Inc. Upon information and belief, Kidde PLC, Inc. has conducted and/or availed itself of doing business throughout the United States, including in Wisconsin.

p. Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, United Kingdom registration number 134210, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is or has been composed

of different subsidiaries and/or divisions, including but not limited to, Chubb Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc.  Upon information and belief, Chubb was part of UTC Fire & Security Americas Corporation, Inc.

q.  Defendant UTC Fire & Security Americas Corporation, Inc. ("UTC") is a Delaware corporation with its principal place of business at 13995 Pasteur Blvd., Palm Beach Gardens, Florida 33418. Upon information and belief, UTC was a division of United Technologies Corporation. Upon information and belief, UTC has conducted and/or availed itself of doing business throughout the United States, including in Wisconsin.

r.  Defendant Carrier Global Corporation is a Delaware corporation with its principal place of business located at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418. Upon information and belief, UTC is now a division of Carrier. Upon information and belief, Carrier Global Corporation has conducted and/or availed itself of doing business throughout the United States, including in Wisconsin.

s.  Defendant Raytheon Technologies Corporation (f/k/a United Technologies Corporation) ("Raytheon Tech f/k/a United Tech") is a Delaware corporation with its principal place of business at 870 Winter Street, Waltham, MA 02451. Upon information and belief, Raytheon Tech f/k/a United Tech has conducted and/or availed itself of doing business throughout the United States, including in Wisconsin.

t.  Defendant National Foam, Inc. is a Delaware corporation with its principal place of business located at 141 Junny Road, Angier, North Carolina 27501. National Foam, Inc. is a subsidiary of Angus International Safety Group, Ltd. Upon

9

information and belief, National Foam, Inc. also manufactures the Angus brand of AFFF products. Upon information and belief, National Foam, Inc. has conducted and/or availed itself of doing business throughout the United States, including in Wisconsin.

u.  Defendant Angus International Safety Group, Ltd. is a foreign private limited company, United Kingdom registration number 8441763, with offices at Station Road, High Bentham, Near Lancaster, United Kingdom. Upon information and belief, Angus International Safety Group, Ltd. is the parent company of National Foam, Inc.

v.  Defendant Buckeye Fire Equipment Company ("Buckeye") is an Ohio corporation with its principal place of business at 110 Kings Road, Mountain, North Carolina 28086. Upon information and belief, Buckeye has conducted and/or availed itself of doing business throughout the United States, including in Wisconsin.

w.  Defendant Arkema, Inc. is a Pennsylvania corporation with its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Arkema, Inc. is registered to do business in Wisconsin. Upon information and belief, Arkema, Inc. is the operating U.S. subsidiary of Arkema France, SA.

x.  Defendant BASF Corporation ("BASF") is a Delaware corporation with its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932. Upon information and belief, BASF acquired Ciba-Geigy Corporation and/or Ciba Specialty Chemicals. BASF is registered to do business in Wisconsin. Upon information and belief, Ciba-Geigy Corporation and/or Ciba Specialty Chemicals has conducted and/or availed itself of doing business throughout the United States, including in Wisconsin.

y.  Defendant ChemDesign Products, Inc. ("ChemDesign") is a Delaware corporation with its principal place of business located at 2 Stanton Street, Marinette, Wisconsin 54143. ChemDesign is registered to do business in Wisconsin.

z.  Defendant Clariant Corporation ("Clariant") is a New York corporation with its principal place of business located at 4000 Monroe Road, Charlotte, North Carolina 28205. Clariant is registered to do business in Wisconsin.

aa. Defendant Chemicals Incorporated is a Texas corporation with its principal place of business located at 12321 Hatcherville Road, Baytown, Texas 77521. Upon information and belief, Chemicals Incorporated has conducted and/or availed itself of doing business throughout the United States, including in Wisconsin.

bb. Defendant Nation Ford Chemical Company is a South Carolina corporation with its headquarters located at 2300 Banks Street, Fort Mill, South Carolina 29715. Upon information and belief, Nation Ford Chemical Company conducts and/or avails itself of doing business throughout the United States, including Wisconsin.

cc. Defendant AGC Chemicals Americas, Inc. ("AGCCA") is a Delaware corporation with its principal business office at 55 E. Uwchlan Avenue, Suite 201, Exton, Pennsylvania 19341. Upon information and belief, AGCCA is a subsidiary of AGC, Inc., a Japanese corporation formerly known as Asahi Glass Company, Ltd. Upon information and belief, AGCCA conducts and/or avails itself of doing business throughout the United States, including Wisconsin.

dd. Defendant AGC, Inc. f/k/a Asahi Glass Co., Ltd. ("AGC"), is a corporation organized under the laws of Japan and does business throughout the United States.

AGC has its principal place of business at 1-5-1, Marunouchi, Chiyoda-ku, Tokyo 100-8405 Japan.

ee. Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation with its principal place of business located at 196122 E County Road 40, Woodward, Oklahoma 73801. Upon information and belief, Deepwater has conducted and/or availed itself of doing business throughout the United States, including in Wisconsin.

ff. Defendant Dynax Corporation ("Dynax") is a Delaware corporation with its principal place of business located at 103 Fairview Park Drive, Elmsford, New York 10523. Upon information and belief, Dynax has conducted and/or availed itself of doing business throughout the United States, including in Wisconsin.

gg. Defendant Archroma Management, LLC, is a foreign limited liability company registered in Switzerland, with a principal business address of Neuhofstrasse 11, 4153 Reinach, Basel-Land, Switzerland.

hh. Defendant Archroma U.S., Inc. is a Delaware corporation with its principal place of business located at 5435 77 Center Dr., #10, Charlotte, North Carolina 28217. Upon information and belief, Archroma U.S., Inc. is a subsidiary of Archroma Management, LLC, and supplied Fluorosurfactant Products for use in AFFF. Archroma U.S., Inc. is registered to do business in Wisconsin.

ii. Upon information and belief, Defendants John Doe 1-49 were designers, manufacturers, marketers, distributors, and/or sellers of Fluorosurfactant Products that have and continue to contaminate Plaintiff's Property. Although the identities of the John Doe Defendants are currently unknown, it is expected that their names

will be ascertained during discovery, at which time Plaintiff will move for leave of
this Court to add those individuals' actual names to the Complaint as Defendants.

17.     Any and all references to a Defendant or Defendants in this Complaint include any
predecessors, successors, parents, subsidiaries, affiliates, and divisions of the named Defendants.

18.     When the term "Defendants" is used alone, it refers to all Defendants named in this
Complaint jointly and severally. When reference is made to any act or omission of the Defendants,
it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the
Defendants committed or authorized such act or omission, or failed to adequately supervise or
properly control or direct their employees while engaged in the management, direction, operation,
or control of the affairs of Defendants, and did so while acting within the scope of their
employment or agency.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this action because this is an action
for damages in which the amount claimed is greater than the amount claimed under Wis. Stat. §
799.01(1)(d).

20.     Venue is appropriate pursuant to Wis. Stat. § 801.50 because a substantial part of the
events and omissions giving rise to Plaintiff's causes of action accrued in Dane County, and
because the property and resources affected by Defendants' conduct are located in Dane County.

## FACTUAL ALLEGATIONS

### A.  THE CONTAMINANTS: PFOA & PFOS

21.     PFOA and PFOS are man-made chemicals within a class known as perfluoroalkyl
acid ("PFAA"). PFAAs are part of the larger chemical family known as per- and polyfluoroalkyl
substances ("PFAS"). PFAA is composed of a chain of carbon atoms in which all but one of the

carbon atoms are bonded to fluorine atoms, and the last carbon atom is attached to a functional group.  The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature, which is a reason why these molecules are so persistent.  PFOA and PFOS contain eight carbon-fluorine bonds. For this reason, they are sometimes referred to as "C8."

22.     PFOA and PFOS are highly water soluble, which increases the rate at which they spread throughout the environment, contaminating soil, groundwater, and surface water.  Their mobility is made more dangerous by their persistence in the environment and resistance to biologic, environmental, or photochemical degradation.[1]

23.     PFOA and PFOS are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver.  They have been found globally in water, soil, air, as well as in human food supplies, breast milk, umbilical cord blood, and human serum.[2]

24.     PFOA and PFOS are persistent in the human body. A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.[3]

25.     Since they were first produced, information has emerged showing negative health effects caused by exposure to PFOA and PFOS.

26.     According to the United States Environmental Protection Agency ("EPA"), "…studies indicate that exposure of PFOA and PFOS over certain levels may result in…developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g.,

---

[1] See EPA, Drinking Water Health Advisory for Perfluorooctanoic Acid (PFOA), EPA Document Number: 822-R-16-005 (May 2016) at 16; and Drinking Water Health Advisory for Perfluorooctane Sulfonate (PFOS), EPA Document Number: 822-R-16-004 (May 2016) at 16, both available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.
[2] See EPA Document Number: 822-R-16-005 (May 2016) at 18-20, 25-27; and EPA Document Number: 822-R-16-004 (May 2016) at 19-21, 26 28.
[3] See EPA Document Number: 822-R-16-005 (May 2016) at 55; and EPA Document Number: 822-R-16-004 (May 2016) at 55.

tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes)."[4]

27.     EPA has also warned that "there is suggestive evidence of carcinogenic potential for PFOS."[5]

28.     EPA has noted that "drinking water can be an additional source [of PFOA/PFOS in the body] in the small percentage of communities where these chemicals have contaminated water supplies." In communities with contaminated water supplies, "such contamination is typically localized and associated with a specific facility, for example…an airfield at which [PFOA/PFOS] were used for firefighting."[6]

29.     EPA has issued Health Advisory Levels of 70 parts per trillion ("ppt") combined for PFOA and PFOS found in drinking water.

30.     In February 2022, the Wisconsin Department of Natural Resources' Natural Resources Board approved administrative rules setting (a) drinking water standards for PFOA and PFOS (separately and combined) at 70 ng/L; (b) drinking-water-source surface waters standards for PFOS at 8 ng/L and PFOA at 20 ng/L; and for other surface waters a general standard of 95 ng/L.  In March 2022, these administrative rules were approved by Wisconsin's governor and are currently in the legislative review process. These are maximum levels pursuant to legislative

---

[4] *See* "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.
[5] *See* "Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)" U.S. Environmental Protection Agency Office of Water Health and Ecological Criteria Division, EPA Document Number: 822-R-16-002, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.
[6] *See* "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

action. Plaintiff contends that there are no acceptable levels of Defendants' man-made chemicals on its Property.

### B. AQUEOUS FILM-FORMING FOAM

31.     AFFF is a type of water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports and military bases, among other places.

32.     The AFFF designed, manufactured, marketed, distributed, and/or sold by Defendants contained either or both PFOA and PFOS, or the chemical precursors to PFOA or PFOS.

33.     PFOS and/or the chemical precursors to PFOS contained in 3M's AFFF were manufactured by 3M's patented process of electrochemical fluorination ("ECF").

34.     All other Defendants manufactured fluorosurfactants for use in AFFF through the process of telomerization. Telomerization produced fluorotelomers, including PFOA and/or chemical precursors to PFOA.

35.     AFFF can be made without PFOA, PFOS, or their precursor chemicals. Fluorine-free foams and short-chains foams do not release PFOA, PFOS, and/or their precursor chemicals into the environment.

36.     AFFF is used to extinguish fires that are difficult to fight, particularly fires that involve petroleum or other flammable liquids. AFFF is typically sprayed directly onto a fire, where it works by coating the ignited fuel source, preventing its contact with oxygen, and suppressing combustion.

37.     When used as the Defendants intended and directed, Defendants' AFFF at issue releases PFOA, PFOS, and/or their precursor chemicals into the environment.

38.     Once PFOA and PFOS are free in the environment, these chemicals do not hydrolyze, photolyze, or biodegrade under typical environmental conditions and are extremely persistent in

16

the environment. As a result of their persistence, upon information and belief, they are widely distributed throughout soil, sediment, air, surface water, groundwater, and stormwater.

39.     The use of Defendants' Fluorosurfactant Products as directed and intended by the Defendants allowed PFOA, PFOS, and/or their precursor chemicals to enter into and onto Plaintiff's Property where, upon information and belief, these compounds migrated through the subsurface, thereby contaminating the surface water, soil, sediment, groundwater, and stormwater, as well as causing other extensive and ongoing damage to Plaintiff's Property.

40.     Due to the chemicals' persistent nature, among other things, these chemicals have, and continue to cause injury and damage to Plaintiff's Property.

## C.  DEFENDANTS' KNOWLEDGE OF PFOA AND PFOS HAZARDS

41.     On information and belief, by the early 1980s, Defendants knew, or reasonably should have known, among other things, that: (a) PFOA and PFOS are toxic; and (b) when sprayed in the open environment per the instructions given by the manufacturer, PFOA and PFOS readily migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

42.     Defendants also knew or reasonably should have known that PFOA and PFOS could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens that cause genetic damage.

17

43.    In 1980, 3M published data in peer reviewed literature showing that humans retain PFOS in their bodies for years. Based on that data, 3M estimated it could take a person up to 1.5 years to clear just half of the accumulated PFOS from their body after all exposures had ceased.[7]

44.    By the early 1980s, the industry suspected a correlation between PFOS exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOS in workers' bodies and birth defects in children of workers.

45.    In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[8]

46.    Beginning in 1983, 3M documented a trend of increasing levels of PFOS in the bodies of 3M workers. In an internal memo, 3M's medical officer warned "we must view this present trend with serious concern. It is certainly possible that … exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."[9]

47.    Based on information and belief, in 2000, under pressure from the EPA, 3M announced that it was phasing out PFOS and U.S. production of PFOS; 3M's PFOS-based AFFF production did not fully phase out until 2002.

48.    From 1951, DuPont, and on information and belief, Chemours, designed, manufactured, marketed, and sold Fluorosurfactant Products, including Teflon nonstick cookware,

---

[7] *See* Letter from 3M to Office of Pollution Prevention and Toxics, EPA titled "TSCA 8e Supplemental Submission, Docket Nos. 8EHQ-0373/0374 New Data on Half Life of Perfluorochemicals in Serum," available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.
[8] *See* Memorandum "C-8 Blood Sampling Results, Births and Pregnancies," available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.
[9] *See* Memorandum "Organic Fluorine Levels," August 31, 1984, available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.

18

and more recently PFAS feedstocks, such as Forafac 1157 N, for the use in the manufacture of AFFF products.

49.     Based on information and belief, in 2001 or earlier, DuPont manufactured, produced, marketed, and sold Fluorosurfactant Products and/or PFAS feedstocks to some or all of the AFFF product manufacturers for use in their AFFF products that were discharged into the environment and contaminated Plaintiff's Property.

50.     DuPont had been studying the potential toxicity of PFOA since at least the 1960s and knew that it was contaminating drinking water drawn from the Ohio River and did not disclose to the public or to government regulators what they knew about the substance's potential effects on humans, animals, or the environment.[10]

51.     By December 2005, the EPA uncovered evidence that DuPont concealed the environmental and health effects of PFOA, and the EPA announced the "Largest Environmental Administrative Penalty in Agency History."[11] The EPA fined DuPont for violating the Toxic Substances Control Act "Section 8(e)—the requirement that companies report to the EPA substantial risk information about chemicals they manufacture, process or distribute in commerce."[12]

52.     By July 2011, DuPont could no longer credibly dispute the human toxicity of PFOA, which it continued to manufacture. The "C8 Science Panel" created as part of the settlement of a class action over DuPont's releases from the Washington Works plant had reviewed the available

---

[10] *See, e.g.,* Fred Biddle, "DuPont confronted over chemical's safety," *Wilmington News Journal* (Apr. 13, 2003). The *Wilmington News Journal* is published in Wilmington, Ohio.
[11] $16.5 million.
[12] U.S.Envtl. Prot. Agency, Reference News Release, "EPA Settles PFOA Case Against DuPont for Largest Environmental Administrative Penalty in Agency History" (Dec. 14, 2005), https://www.epa.gov/enforcement/reference-news-release-epa-settles-pfoa-case-against-dupont-largest-environmental (last viewed on January 30, 2018).

19

scientific evidence and notified DuPont of a "probable link"[13] between PFOA exposure and the serious (and potentially fatal) conditions of pregnancy-induced hypertension and preeclampsia.[14] By October 2012, the C8 Science Panel had notified DuPont of a probable link between PFOA and five other conditions—high cholesterol, kidney cancer, thyroid disease, testicular cancer, and ulcerative colitis.

53.     In July 2015, DuPont spun off its chemicals division by creating Chemours as a new publicly-traded company, once wholly owned by DuPont. By mid-2015, DuPont had dumped its perfluorinated chemical liabilities into the lap of the new Chemours.

54.     Notwithstanding this knowledge, Defendants negligently and carelessly: (1) designed, manufactured, marketed, distributed, and/or sold Fluorosurfactant Products; (2) issued instructions on how Fluorosurfactant Products should be used and disposed of (namely, by washing the foam into the soil or wastewater system), thus improperly permitting PFOA and/or PFOS to contaminate the surface water, soil, and groundwater in and around the Plaintiff's Property; (3) failed to recall and/or warn the users of Fluorosurfactant Products, negligently designed products containing or degrading into PFOA and/or PFOS, of the dangers of surface water, soil, and groundwater contamination as a result of standard use and disposal of these products; and (4) further failed and refused to issue the appropriate warnings and/or recalls to the users of Fluorosurfactant Products, notwithstanding the fact that Defendants knew the identity of the purchasers of the Fluorosurfactant Products.

---

[13] Under the settlement, "probable link," means that given the available scientific evidence, it is more likely than not that among class members a connection exists between PFOA/C8 exposure and a particular human disease.
[14] See The C8 Science Panel, Status Report: PFOA (C8) exposure and pregnancy outcome among participants in the C8 Health Project (July 15, 2011), http://www.c8sciencepanel.org/pdfs/Status_Report_C8_and_pregnancy_outcome_15July2011.pdf (last viewed on January 28, 2018).

55.     As a direct result of Defendants' actions and/or inactions alleged in this Complaint, Plaintiff's Property has been and will continue to be contaminated with PFAS, including PFOA and PFOS, creating an environmental hazard, unless such contamination is remediated. As a direct and proximate result of Defendants' actions and/or inactions, Plaintiff must assess, evaluate, investigate, monitor, remove, clean up, correct, treat, and remediate PFOA and PFOS contamination on its Property and any PFAS contamination arising therefrom at significant expense, loss, and damage.

56.     Defendants had a duty and breached their duty to evaluate and test such Fluorosurfactant Products adequately and thoroughly to determine their potential human health and environmental impacts before they sold such products. They also had a duty and breached their duty to minimize the environmental harm caused by Fluorosurfactant Products.

**D.  THE IMPACT OF PFOA AND PFOS ON PLAINTIFF'S PROPERTY**

57.     PFOA and PFOS have been detected in the soil, groundwater, surface water, and stormwater extracted from Plaintiff's Property.  PFOA and PFOS have been detected and/or are present in certain of areas of Plaintiff's Property.  The detection and/or presence of PFOA and PFOS, and the threat of further detection and/or presence of PFOA and PFOS, in Plaintiff's Property has resulted, and will continue to result, in significant injuries and damage to Plaintiff.

58.     Upon information and belief, the invasion of Plaintiff's Property with PFOA and PFOS is recurring, resulting in new harm to Plaintiff on each occasion.

59.     The injuries to Plaintiff caused by Defendants' conduct constitute an unreasonable interference with, and damage to, Plaintiff and Plaintiff's Property. Plaintiff's interests in protecting its Property constitute a reason for seeking damages sufficient to restore such Property to its pre-contamination condition, in addition to the other damages sought herein.

## **FIRST CAUSE OF ACTION**

### STRICT LIABILITY – DEFECTIVE DESIGN

60.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

61.     Defendants were engaged in the business of researching, designing, manufacturing, testing, distributing, marketing, and selling Fluorosurfactant Products.

62.     Defendants manufactured, marketed and/or sold Fluorosurfactant Products for use in controlling and extinguishing aviation, marine, fuel, and other flammable liquid fuel fires.

63.     Plaintiff was harmed by Fluorosurfactant Products which were designed, manufactured, marketed, sold and/or distributed by Defendants, and which were defectively designed, did not include sufficient instructions, and did not include sufficient warning of potential safety hazards.

64.     Defendants' Fluorosurfactant Products did not perform as safely as an ordinary consumer would have expected them to perform when used or misused in an intended or reasonably foreseeable way.

65.     Defendants represented, asserted, claimed and/or warranted that their Fluorosurfactant Products could be used in conformity with accompanying instructions and labels in a manner that would not cause injury or damage.

66.     As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of Fluorosurfactant Products, Defendants owed a duty to all persons whom Defendants' products might foreseeably harm, including Plaintiff, not to manufacture, sell, or market any product which is unreasonably dangerous for its intended and foreseeable uses.

67.     Defendants' Fluorosurfactant Products used on or in the vicinity of Plaintiff's Property were used in a reasonably foreseeable manner and without substantial change in the condition in which the products were sold.

68.     Defendants knew, or should have known, that use of Defendants' Fluorosurfactant Products in their intended manner would result in the spillage, discharge, disposal, or release of PFOA and/or PFOS into the soil, sediment, groundwater, surface water, and stormwater.

69.     Furthermore, Defendants knew or should have known that their Fluorosurfactant Products were toxic, could not be contained, and do not readily degrade in the environment.

70.     Defendants' Fluorosurfactant Products used on Plaintiff's Property were defective in design and unreasonably dangerous because, among other things: (a) PFOA and PFOS cause soil and water contamination, even when used in their foreseeable and intended manner; (b) even at extremely low levels, PFOA and PFOS render drinking water unfit for consumption; (c) PFOA and PFOS pose significant threats to public health; and (d) PFOA and PFOS create real and potential threat to the environment.

71.     Plaintiff was, is and will continue to be harmed by Defendants' defectively designed Fluorosurfactant Products.

72.     As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, continues to incur, and/or will incur costs and damages related to the PFAS contamination of its Property and any PFAS contamination arising therefrom, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, and/or disposal of the PFAS contamination, operating, maintenance and consulting costs, punitive damages, legal costs and fees, and diminished property value.

## SECOND CAUSE OF ACTION

### STRICT LIABILITY – FAILURE TO WARN

73.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

74.     As manufacturers, distributors, suppliers, sellers, and marketers of Fluorosurfactant Products, Defendants had a duty to issue warnings to Plaintiff, the public, water providers, and public officials of the risks posed by PFOA and PFOS.

75.     Defendants knew that their Fluorosurfactant Products would be purchased, transported, stored, handled, and used without notice of the hazards that PFOA and PFOS pose to human health and the environment.

76.     Defendants breached their duty to warn by unreasonably failing to provide Plaintiff, public officials, purchasers, downstream handlers, and/or the general public with warnings about the potential and/or actual contamination of the environment by PFOA and PFOS, despite Defendants' knowledge that PFOA and PFOS were real and potential threats to the environment.

77.     Fluorosurfactant Products purchased or otherwise acquired from Defendants were used, discharged, and/or released at and/or in the vicinity of Plaintiff's Property.

78.     Defendants' Fluorosurfactant Products were used in a reasonably foreseeable manner and without substantial changes in the condition in which the products were sold.

79.     Defendants' Fluorosurfactant Products used on and/or in the vicinity of Plaintiff's Property were defective in design and unreasonably dangerous for the reasons set forth above.

80.     Despite the known and/or foreseeable environmental and human health hazards associated with the use and/or disposal of Defendants' Fluorosurfactant Products on or near Plaintiff's Property, including contamination of Plaintiff's Property with PFOA and/or PFOS,

Defendants failed to provide adequate warnings of, or take any other precautionary measures to mitigate, those hazards.

81.     In particular, Defendants failed to describe such hazards or provide any precautionary statements regarding such hazards in the labeling of their Fluorosurfactant Products.

82.     As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, continues to incur, and/or will incur costs and damages related to the PFAS contamination of its Property and any PFAS contamination arising therefrom, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, and/or disposal of the PFAS contamination, operating, maintenance and consulting costs, punitive damages, legal costs and fees, and diminished property value.

## THIRD CAUSE OF ACTION

### PUBLIC NUISANCE

84.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

85.     Defendants designed, manufactured, distributed, marketed, sold, and/or assumed or acquired liabilities for the manufacture and/or sale of Fluorosurfactant Products in a manner that created, or participated in creating, a public nuisance that unreasonably and substantially interferes with the use and enjoyment of Plaintiff's Property, and unreasonably endangers or injures the health, safety, and comfort of the general public and Plaintiff, causing inconvenience and annoyance.

86.     The unreasonable and substantial interference with the use and enjoyment of Plaintiff's Property includes, but is not limited to: the contamination of Plaintiff's Property with PFAS; and the exposure to known toxic chemicals manufactured and/or sold by Defendants.

87.     The presence of PFAS causes significant costs, inconvenience, and annoyance to Plaintiff. The contamination affects a substantial number of people who rely upon Plaintiff for commercial and recreational purposes and interferes with the rights of the public at large to clean and safe natural resources and environment.

88.     The seriousness of the environmental and human health risk far outweighs any social utility of Defendants' conduct in manufacturing Fluorosurfactant Products and concealing the dangers those Products posed to human health and the environment.

89.     Actual and threatened PFOA and/or PFOS contamination caused by Defendants' conduct has caused, and continues to cause, injury to Plaintiff in the form of present and serious interference with the use, benefit, and/or enjoyment of its Property in a way that an ordinary, reasonable person would find is a substantial inconvenience and annoyance.

90.     As a result of the actual and threatened PFAS contamination caused by Defendants' conduct, Plaintiff has suffered, and will continue to suffer, harm that is different from the type of harm suffered by the general public, and Plaintiff has incurred, and will continue to incur, substantial costs to remove the contamination from its Property.

91.     Plaintiff did not consent to the conduct that resulted in the contamination of its Property.

92.     Defendants' conduct was a substantial factor in causing the harm to Plaintiff.

93.     Defendants knew or, in the exercise of reasonable care, should have known that the use and introduction of their Fluorosurfactant Products into the environment would and has continuously, unreasonably and seriously endangered and interfered with the ordinary safety, use, benefit, and enjoyment of Plaintiff's Property by Plaintiff.

94.     As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, continues to incur, and/or will incur costs and damages related

to the PFAS contamination of its Property and any PFAS contamination arising therefrom, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, filtration, and/or disposal of the PFAS contamination, operating, maintenance and consulting costs, legal fees, diminution of property value, and all other equitable and applicable damages.

## FOURTH CAUSE OF ACTION

### PRIVATE NUISANCE

95.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

96.     Plaintiff's Property has been, and continues to be, contaminated by PFAS as a direct and proximate result of the acts and omissions of Defendants as set forth above.

97.     Actual and threatened PFAS contamination caused by Defendants' conduct has caused, and continues to cause, injury to Plaintiff in the form of present and serious interference with the ordinary safety, use, benefit, and/or enjoyment of Plaintiff's Property.

98.     As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, continues to incur, and/or will incur costs and damages related to the PFAS contamination of its Property and any PFAS contamination arising therefrom, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, filtration, and/or disposal of the PFAS contamination, operating, maintenance and consulting costs, legal fees, diminution of property value, and all other equitable and applicable damages.

**FIFTH CAUSE OF ACTION**

TRESPASS

99.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

100.     Plaintiff is the administrator, operator and/or actual possessor of Plaintiff's Property and other relevant structures located thereon with the obligation to maintain, operate, and supervise Plaintiff's property and the authority to sue relative thereto.  Defendants knew, or in the exercise of reasonable care should have known, that PFOA and/or PFOS contaminates soil, surface, and groundwater, including the property and other rights of Plaintiff.

101.     Defendants failed to properly warn against the use of Fluorosurfactant Products such that they proximately caused and continue to cause PFOA and/or PFOS to contaminate Plaintiff's Property, including but not limited to its soil, sediment, surface water, groundwater, and other structures located thereon.

102.     The contamination of Plaintiff's Property has varied over time and has not yet ceased. Upon information and belief, PFOA and/or PFOS continue to migrate onto and enter Plaintiff's Property.

103.     Plaintiff has not consented to, and does not consent to, this trespass or contamination.

104.     Defendants knew or reasonably should have known that Plaintiff would not consent to this trespass.

105.     Plaintiff was, is, and will continue to be harmed by the entry of Defendants' Fluorosurfactant Products onto its Property.

106.     As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, continues to incur, and/or will incur costs and damages related to the PFAS contamination of its Property and any PFAS contamination arising therefrom, including but not

limited to the investigation, monitoring, treatment, testing, remediation, removal, and/or disposal of the PFAS contamination, operating, maintenance and consulting costs, punitive damages, legal costs and fees, and diminished property value.

## SIXTH CAUSE OF ACTION

### NEGLIGENCE

107. Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

108. As manufacturers, refiners, formulators, distributors, suppliers, sellers, marketers, shippers, and/or handlers of Fluorosurfactant Products, Defendants owed a duty to Plaintiff, as well as to all persons whom Defendants' Fluorosurfactant Products might foreseeably harm, to exercise due care in the instructing, labeling, and warning of the handling, control, use, and disposal of Defendants' Fluorosurfactant Products.

109. Despite the fact that Defendants knew that PFOA and PFOS are toxic, can contaminate soil and water resources, and present significant risks to human health and the environment, Defendants negligently: (a) designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold Fluorosurfactant Products; (b) issued instructions on how Fluorosurfactant Products should be used and disposed of, thus improperly permitting PFOA and/or PFOS to enter and contaminate Plaintiff's Property; (c) failed to recall and/or warn the users of Fluorosurfactant Products of the dangers of soil and water contamination as a result of standard use and disposal of these products; and (d) failed and refused to issue the appropriate warnings and/or recalls to the users of Fluorosurfactant Products regarding the proper use and disposal of these products, notwithstanding the fact that Defendants knew, or could determine with reasonable certainty, the identity of the purchasers of their Fluorosurfactant Products.

110.    A reasonable manufacturer, seller, or distributor, under the same or similar circumstances would have warned of the dangers or instructed on the safe use of the Fluorosurfactant Products.

111.    Defendants' conduct lacked any care and was an extreme departure from what a reasonable careful company would do in the same situation to prevent harm to others and the environment.

112.    Plaintiff was, is, and will continue to be harmed by Defendants' conduct.

113.    As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, continues to incur, and/or will incur costs and damages related to the PFAS contamination of its Property and any PFAS contamination arising therefrom, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, and/or disposal of the PFAS contamination, operating, maintenance and consulting costs, punitive damages, legal costs and fees, and diminished property value.

## SEVENTH CAUSE OF ACTION

WISCONSIN UNIFORM FRAUDULENT TRANSFER ACT – WISC. STAT. § 242

(UFTA DEFENDANTS ONLY)

114.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

115.    Plaintiff seeks equitable and other relief pursuant to the Wisconsin Uniform Fraudulent Transfer Act – W.S.A. § 242 against E. I. DuPont de Nemours and Company, The Chemours Company, The Chemours Company FC, LLC, Corteva, Inc., and DuPont de Nemours, Inc. (collectively, "UFTA Defendants").

116.    Upon information and belief, in February 2014, DuPont formed The Chemours Company as a wholly-owned subsidiary and used it to spin off DuPont's "Performance Chemicals" business line in July 2015.

117.    Upon information and belief, at the time of the spinoff, DuPont's Performance Chemicals division contained the AFFF and/or PFAS business segments. In addition to the transfer of the Performance Chemicals division, Chemours accepted broad assumption of liabilities for DuPont's historical use, manufacture, and discharge of PFAS.

118.    Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries from the manufacture and sale of Fluorosurfactant Products.

119.    Upon information and belief, as a result of the transfer of assets and liabilities described in this Complaint, UFTA Defendants limited the availability of assets to cover judgments for all of the liability for damages and injuries from the manufacture and sale of Fluorosurfactant Products.

120.    Upon information and belief, UFTA Defendants have (a) acted with intent to hinder, delay and defraud parties, or (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and (i) was engaged or was about to engage in a business for which the remaining assets of Chemours were unreasonably small in relation to the business; or (ii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

121.    Upon information and belief, UFTA Defendants engaged in acts in furtherance of a scheme to transfer its assets out of the reach of parties, such as the Plaintiff, that have been damaged as a result of UFTA Defendants' actions as described in this Complaint.

122.    Upon information and belief, UFTA Defendants acted without receiving a reasonably equivalent value in exchange for the transfer of obligations, and DuPont believed, or reasonably should have believed, that it would incur debts beyond Chemours' ability to pay as they became due.

123.    Plaintiff seeks to avoid the transfer of DuPont's liabilities for the claims brought in this Complaint and to hold DuPont jointly and severally liable for any damages or other remedies that may be awarded by this Court or a jury under this Complaint.

124.    Plaintiff further reserves such other rights and remedies that may be available to it as may be necessary to fully compensate Plaintiff for the damages and injuries it has suffered as alleged in this Complaint.

## PUNITIVE DAMAGES

125.    Under the applicable laws of the State of Wisconsin, Plaintiff seeks punitive damages due to the wanton and willful acts and/or omissions of Defendants as set forth and alleged throughout this Complaint.

## PRAYER FOR RELIEF

Plaintiff respectfully requests a trial of this Action before a jury, and that, upon a favorable verdict, this Court enter judgment in favor of Plaintiff and against Defendants, as follows:

1.  Compensatory damages according to proof including, but not limited to:

    a.  costs and expenses related to the past, present, and future investigation, sampling, testing, and assessment of the extent of PFAS contamination on and within Plaintiff's Property and any PFAS contamination arising therefrom;

    b.  costs and expenses related to the past, present, and future treatment, and remediation of PFAS contamination of Plaintiff's Property and any PFAS contamination arising therefrom;

    c.  costs and expenses associated with and related to the removal and disposal of the contamination; and

    d.  costs and expenses related to the past, present, and future installation, and maintenance of monitoring mechanisms to assess and evaluate PFAS on and within Plaintiff's Property and any PFAS contamination arising therefrom.

2. Diminished property value;

3. Consequential damages;

4. Punitive damages;

5. Costs, disbursements, and attorneys' fees of this lawsuit;

6. Pre-judgment and post-judgment interest; and

7. Any other and further relief as the Court deems just, proper, and equitable.

Dated: April 26, 2022

                                     Electronically Filed By:  /s/ Arynne Johnson
                                       Arynne Johnson
                                       Wisconsin State Bar No. 1117708
                                       **BARON & BUDD, P.C.**
                                       3102 Oak Lawn Avenue, Suite 1100
                                       Dallas, TX 75219-4281
                                       Telephone: (214) 521-3605
                                       Fax: (214) 520-1181

                                       - and -

Amy Tutwiler
Assistant Corporation Counsel
**Dane County Corporation Counsel**
210 Martin Luther King Jr. Blvd., Rm. 419
Madison, WI  53703
Tel: 608-266-4355
tutwiler.amy@countyofdane.com

*Attorneys for Plaintiff*

FILED
05-20-2022
CIRCUIT COURT
DANE COUNTY, WI
2022CV000997

STATE OF WISCONSIN          CIRCUIT COURT          DANE COUNTY

---

COUNTY OF DANE,

        Plaintiff,

    vs.

3M COMPANY (f/k/a Minnesota Mining and
Manufacturing Co.), AGC CHEMICALS
AMERICAS INC., AGC, INC. (f/k/a Asahi
Glass Co., Ltd.), ANGUS INTERNATIONAL
SAFETY GROUP, LTD., ARCHROMA
MANAGEMENT, LLC, ARCHROMA U.S.,
INC., ARKEMA, INC., BASF
CORPORATION, BUCKEYE FIRE
EQUIPMENT COMPANY, CARRIER
GLOBAL CORPORATION, CENTRAL
SPRINKLER, LLC, CHEMDESIGN
PRODUCTS, INC., CHEMGUARD, INC.,
CHEMICALS INCORPORATED, CHUBB
FIRE, LTD., CLARIANT CORPORATION,
CORTEVA, INC., DEEPWATER
CHEMICALS, INC., JOHN DOE
DEFENDANTS 1-49, DUPONT DE
NEMOURS, INC., DYNAX CORPORATION,
E.I. DUPONT DE NEMOURS AND
COMPANY, KIDDE PLC, INC., FIRE
PRODUCTS GP HOLDING, LLC, JOHNSON
CONTROLS INTERNATIONAL, PLC,
KIDDE-FENWAL, INC., NATION FORD
CHEMICAL COMPANY, NATIONAL
FOAM, INC., RAYTHEON TECHNOLOGIES
CORPORATION (f/k/a United Technologies
Corporation), THE CHEMOURS COMPANY,
THE CHEMOURS COMPANY FC, LLC,
TYCO FIRE PRODUCTS LP, and UTC FIRE
& SECURITY AMERICAS CORPORATION,
INC.,

        Defendants.

Case No. 22-CV-000997

---

## NOTICE OF APPEARANCE

---

4867-9446-4801

PLEASE TAKE NOTICE that the undersigned appears for defendants, Chemguard, Inc. and Tyco Fire Products LP, in the above-entitled action and requests that all papers filed or served in this action be served upon him at his office at 777 East Wisconsin Avenue, Milwaukee, Wisconsin 53202-5306.

Dated this 20th day of May, 2022.

*Electronically signed by Atty. Jesse Byam-Katzman*
Jesse Byam-Katzman, WBN 1099929
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202
Phone:  (414) 319-7057
Facsimile:  (414) 297-4900
Email:  jbyam-katzman@foley.com

*Attorneys for Defendants Chemguard, Inc. and Tyco Fire Products LP*

2

4867-9446-4801